# Maley, Executrix, *v.* Pennsylvania Railroad Company, Appellant.

*Decedents' estates — Presumption of death — Ascertainment of fact of death—Absence from domicile—Employees' savings fund res adjudicata—Jurisdiction, Common Pleas—Jurisdiction, Orphans' Court—Act of June 24, 1885, P. L. 155.*

1. There is nothing in the Act of June 24, 1885, P. L. 155, relating to the granting of letters of administration upon the estates of persons presumed to be dead indicating an intention on the part of the legislature to confer upon the Orphans' Court exclusive jurisdiction of the determination of the fact of death by reason of absence. This question may, and frequently does, arise in collateral proceedings where the object is not to distribute the estate of the absentee, and where the court has complete jurisdiction of the subject-matter.

2. The presumption of death is raised by the absence of a person from his domicile unheard of for seven years. Absence in this connection means that the person is not at the place of his domicile, and that his actual residence is unknown. It is for this reason that his existence is doubtful, and that after seven years of such absence his death is presumed. But removal alone is not enough. The further fact that he has disappeared from his domicile and from the knowledge of those with whom he would naturally communicate, so that his whereabouts have been unknown for seven years, is necessary in order to raise the presumption.

3. Where the absentee's possible destination was known when he left, reasonable search should be made at the place where he was last known to live, before the presumption of death can arise.

4. In an action brought against a railroad company by the executrix of a decedent for deposits made in defendant's employees' saving fund by the decedent, it appeared that deceased in his application for membership provided that in the event of his death the amount due him should be paid to his three children, naming them, or, in case they were not living, to his legal representatives. Defendant's regulations provided for the payment to the beneficiary upon satisfactory proof of the death of a depositor; "or, if the beneficiary so designated shall not be then living, said fund shall be paid either to the heirs or legal representatives of the deceased depositor, as the board, or superintendent, may determine." One of the children assigned all her interest in the fund to the plaintiff. One of the other two children had left home in 1894, when under twenty years of age, and the other in 1897, when about the

74    MALEY, Exrx., *v.* PENNA. R. R. CO., Appellant.

same age. The father died in 1913. During the period which had elapsed from the departure of the two sons, no word was received from either of them, or reasons shown for their going away, or their probable destination, except the testimony of a witness, who said that one of the sons stated that he was "going West." *Held,* that the evidence was sufficient to warrant the jury in finding that the sons were dead, and a judgment on verdict for plaintiff was affirmed.

5. In such case defendant's contention that it might be compelled to pay again if the sons should subsequently return, was without merit, as the defendant was properly protected by the judgment of the court, and the rights of the absentees could be preserved in proceedings to distribute the decedent's estate.

Argued March 12, 1917.    Appeal, No. 257, Jan. T., 1916, by defendant, from judgment of C. P. Bradford Co., Dec. T., 1915, No. 66, on verdict for plaintiff, in case of Margaret Maley, Executor of the Last Will and Testament of Martin Maley, deceased, v. Pennsylvania Railroad Company.    Before BROWN, C. J., MESTREZAT, POTTER, FRAZER and WALLING, JJ.    Affirmed.

Assumpsit for funds deposited with defendant by plaintiff's decedent.    Before MAXWELL, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $1,941.39, and judgment thereon.    Defendant appealed.

*Errors assigned* were in refusing new trial and in refusing to enter judgment for defendant n. o. v.

*Benjamin Kuykendall,* with him *Guy H. Davies,* for appellant.—The Common Pleas Court had no jurisdiction to determine whether or not Jerry and Daniel Maley were dead: Whiteside v. Whiteside, 20 Pa. 473; Sensendefer v. Pacific Mutual Life Ins. Co., 19 Fed. Repr. 68; Jaskalski v. Penna. Slovak Roman & Greek Catholic Union, 64 Pa. Superior Ct. 537.

*T. S. Hickok,* with him *J. W. Burk,* for appellee.—The

court had jurisdiction to adjudicate the fact of the death of Jerry and Daniel Maley: Devlin v. Commonwealth to use, 101 Pa. 273; In re Petition of Mutual Benefit Co. of Penna. for Dissolution, Schoneman's App., 174 Pa. 1; Baker v. Fidelity Title & Trust Co., 55 Pa. Superior Ct. 15.

Where a person is absent from his usual place of residence for seven or more years unheard of, the law raises a presumption of his death: · In re Petition of Mutual Benefit Co. of Penna. for Dissolution, Schoneman's App., 174 Pa. 1; Wolff's Est., 12 W. N. 535; Whiteside's App., 23 Pa. 114; Burr v. Sim et al., 4 Whart. (Pa.) 150; Bradley v. Bradley, 4 Whart. (Pa.) 173; Esterly's App., 109 Pa. 222; Holmes et al. v. Johnson, 42 Pa. 159.; Duffy's Est., 36 W. N. C. 199; Innis v. Campbell et al., 1 Rawle 373; Miller et al. v. Bates et al., 3 S. & R. 490. ·

OPINION BY MR. JUSTICE FRAZER, May 7, 1917:

Martin Maley died in 1913, leaving a will in which, after giving certain specific legacies, he left his residuary estate to his wife, plaintiff in this proceeding, and appointed her executrix. Deceased had been an employee of the Pennsylvania Railroad Company, the defendant, and had, since 1893, made deposits in the employees' saving fund of the company, and, at the time of his death, there was standing to his credit in that fund the sum of $1,774.25, the subject-matter of this litigation. In his application for membership deceased provided that, in event of his death, the amount due him should be paid to his three children, Jerry, Daniel and Mary, or, in case they were not living, to his legal representatives. The regulations governing payment of the saving fund provided that "Upon the presentation to the superintendent of the fund of satisfactory proof of the death of a depositor, the money belonging to him shall be paid only to the beneficiary designated, in accordance with these regulations, to receive the same; or, if the beneficiary so designated shall not be then living, said fund ·

shall be paid either to the heirs or legal representatives of the deceased depositor, as the board, or superintendent, may determine." Daniel and Jerry Maley left home shortly after the father became a depositor to this fund and have not since been heard from. After the death of Martin Maley, Mary assigned her interest in the fund to her mother, the executrix, who then brought this action to recover the entire fund as the personal representative of decedent, basing her claim to the shares of Jerry and Daniel on the presumption of their death, arising from absence unheard of for a period of twenty-one and eighteen years respectively at the time of bringing this action. The court below left to the jury the question whether the absent sons were dead, and a verdict for plaintiff was rendered on which the court, after discharging rules for a new trial and judgment non obstante veredicto, entered judgment, and defendant appealed.

The second assignment of error questions the jurisdiction of the Court of Common Pleas to adjudicate the fact of the death of the two sons. Defendant contends that exclusive jurisdiction of this question is vested in the Orphans' Court, and that an application should first have been made to that court by plaintiff for letters of administration on the estates of the absentees, in accordance with the provision of the Act of June 24, 1885, P. L. 155. Previous to the passage of this act the practice of the register of wills had been to grant letters of administration on the estates of persons presumed to be dead because of seven years absence, on the production of sufficient evidence before him. In the case of Devlin v. Commonwealth to use, 101 Pa. 273, this court held the grant of letters of administration by the register in such case to be absolutely void if afterwards the absent person was found to be alive. The Act of June 24, 1885, P. L. 155, followed, apparently for the purpose of establishing a uniform practice conclusive upon all parties. The act begins by providing that "whenever, hereafter, letters of administration on the estate of any person sup-

posed to be dead on account of absence for seven or more years from the place of his last domicile within this Commonwealth, shall be applied for, it shall be the duty of the register of wills, to whom the application shall be made, to certify the same forthwith to the Orphans' Court of the county." Other sections designate the procedure to be taken by the Orphans' Court, the publication of notice, the evidence which may be offered at the hearing, the giving of a refunding bond for the recovery of property distributed, with power in the court to revoke the letters upon it being made to appear that the supposed decedent is in fact alive, also providing that all acts done by the administrator to the time of revocation of the letters shall remain as valid as if the letters were unrevoked, subject to the right of recovery of the property from the distributees. This act provides a complete system for distribution of estates of supposed decedents, with a view to protect and safeguard the rights of all parties concerned. We find nothing in the act, however, indicating an intention on the part of the legislature to confer upon the Orphans' Court exclusive jurisdiction of the determination of the fact of death by reason of absence. This question may, and frequently does, arise in collateral proceedings where the object is not to distribute the estate of the absentee, and where the court has complete jurisdiction of the subject-matter, as in the present case. In such cases no necessity exists for taking out letters of administration on the estates of the absentees, and no adequate reason appears for holding that a court of competent jurisdiction should delay matters pending before it for the purpose of awaiting an application for appointment of an administrator by the Orphans' Court, merely to determine whether or not certain facts warrant a presumption of death of the absentee, who may in fact have no estate to administer, at least so far as the pending proceeding in the Common Pleas is concerned. True there is nothing in the Act of 1885 to indicate a prerequisite to taking jurisdiction by

the Orphans' Court is ownership of property by the supposed decedent within the State of Pennsylvania, or elsewhere. The conditions, so far as the provisions of the act are concerned, are that the application for letters shall be made by the proper person, and evidence produced sufficient to satisfy the court that the presumption of death has arisen. The act, however, contains no indication of an attempt upon the part of the legislature to confer on the Orphans' Court exclusive jurisdiction and to take from the Common Pleas jurisdiction to determine all questions of fact arising in a proceeding pending before that court, and over which its jurisdiction is undoubted, and jurisdiction of the subject-matter carries with it jurisdiction to decide every incidental question necessarily involved: Wilhelm's App., 79 Pa. 120, 141. The court is not asked to administer the estate of a person presumed to be dead, nor would this be the direct or indirect effect of judgment rendered in the proceeding. Under a verdict for defendant the fund in question must remain in its hands until claimed by the absent owners, or until an administration of their estate is duly made by proceedings brought under the Act of 1885.

The courts have frequently, since the passage of the Act of 1885, assumed jurisdiction to pass on the question of presumption of death without the formality of applying for letters of administration pursuant to that act. For instance, in In re Petition of Mutual Benefit Co. of Penna. for Dissolution, Schoneman's App., 174 Pa. 1, the Common Pleas decided the question in a proceeding to distribute the estate of a mutual benefit association. In Francis v. Francis & Beale, 180 Pa. 644, proof of death of an absentee was received in the Common Pleas in an issue devisavit vel non on the will of another person, the court not deeming it necessary to await a determination of the death of the absentee under the provisions of the Act of 1885. In Baker v. Fidelity Title & Trust Co., 55 Pa. Superior Ct. 15, the question was raised

in a bill in equity for partition and an account of rents.
In that case the court said (page 21) : "The Act of June
24, 1885, relates to the granting of letters of administra-
tion on the estate of persons presumed to be dead by rea-
son of long absence from their former domicile.   It pro-
vides a mode of administration of such property as would
come into the hands of an administrator, but the pro-
ceeding now under consideration is not for the collection
or conservation or administration of Baker's estate; it
is a proceeding to partition his estate and that which
the appellee is demanding is her property and never was
a part of the estate of Baker.   It came into being after
he died.   When the presumption of death arose the
rights of his widow took effect and as no appeal is taken
from the decree in partition by the widow or the heir it
does not appear that the interests of the appellant are
in any wise prejudiced.   The contention that it may
hereafter be discovered that Frank Baker is alive is one
which might be made with propriety after an accounting
when the money is to be paid over, but until that time
the accountant incurs no risk and is not subjected to any
prejudice.   The action is not against the estate of the
missing husband but against the heir at law for the set-
tlement of a property right and is in its general features
a proceeding in rem as to which the jurisdiction of the
court is unquestioned."

A verdict and judgment for plaintiff does not amount
to a distribution of the estate of the absentees, for the
reason that, when the fact of their death, before that of
deceased testator, is established, the fund does not pass
to plaintiff through them, but passes directly to the per-
sonal representative of deceased under the agreement
for disposition of the benefit fund, and also as part of
the estate of the deceased father.   The presumption of
death from absence is as effective as direct proof of the
fact of death, the rule being that property such person
would have inherited does not vest in him, but passes
directly to others entitled thereto: Esterly's App., 109

Pa. 222. In that case it was held, where a son was, by reason of absence, presumed to be dead, the share of his father's estate he would have inherited went directly to the grandchildren and not through the son, and, therefore, creditors of the latter were without right to participate in a distribution of the estate. In the opinion the court says (page 231): "If it now appeared, by positive and direct proof, that Joseph H. Gery had, in fact, died on the day he disappeared, it certainly cannot be doubted that we would distribute this fund, so held in trust and awaiting adjudication, to those upon whom the estate devolved; and as the presumption of death after the lapse of seven years is as effective as direct proof of the fact, we cannot see how any doubt can exist as to parties entitled here." Under this authority, the shares of the sons passed directly to the executrix who represents the estate of decedent, and through her to those entitled. Consequently this action is in no sense one against the estates of the missing sons requiring the raising of administration thereon, and the court below properly sustained its jurisdiction to determine the questions raised.

Defendant cannot be injured by a judgment in favor of the plaintiff for the amount in its hands. It admits the amount is due and merely desires to be protected in making payment to the proper person. This protection is fully given by the judgment of the court in the present proceeding. In Devlin v. Commonwealth to use, 101 Pa. 273, this court held a voluntary payment to the administrator, appointed on the estate of a person on the strength of the presumption of death before the Act of 1885, was not a defense to a subsequent action by the supposed decedent, but said (page 278): "Had John F. Devlin been compelled, by a court of competent jurisdiction, to have paid to the administrator the money in controversy, his case would have been very different." In Miller et al. v. Beates et al., 3 S. & R. 490, it was said in answer to a similar contention (page 494): "As to the injury which might arise to John G. Schlosser, by

this presumption, in case he should be alive, I think it ought not be regarded. He would have his action against those to whom the money will be paid; and although he might lose by their insolvency, yet that would not be a greater evil than would arise from the establishment of a principle that the life of a man ought to be presumed, under circumstances which usually attend death, merely because positive proof of death could not be obtained. I am bound to mention, in justice to the defendants, in this cause, that they have no wish to reap any benefit from the detention of the money in question. Their object is safety; they are willing to pay to the persons who are authorized by law to receive; and, considering the circumstances of the case, I think they were prudent in withholding the money, till the plaintiffs established their right by legal adjudication."

The question as to the amount and sufficiency of the security that should be required to be entered by the distributees entitled to the fund, is not before us and may properly be considered when the account of the administratrix comes before the court for distribution.

The remaining question is whether the evidence is sufficient to warrant the jury in finding the fact of death of the two sons. Jerry Maley left home in 1894 when under twenty years of age. Daniel Maley left in 1897, when about the same age. They lived at home with their father in the small village of Grover, containing about 150 inhabitants. The fact of their leaving was, without doubt, generally known in the community, especially as their father had been a resident there for many years, and the family was well known. After the departure of the sons the father continued to reside in Grover until his death in 1913. During the long period of twenty years which elapsed since the departure of the sons no word was received from either of them, or reason shown for their going away, or their destination given, except by the testimony of a witness, who employed Jerry, to the effect that the latter indicated an intention of "going

West." The father at one time stated to a witness that if Jerry were alive he thought he was on the sea. Defendant contends that something more than the mere fact of the boys not returning home or writing their father was necessary to give rise to the presumption of death, and that an effort to locate the absentees must appear. Just what form such inquiry should take, in view of the facts of this case, we are unable to comprehend. There was nothing to indicate to the father the possible destination of his sons; had such fact been known to him reasonable search should be required to be made at the place where the boys were last known to live. As matters stood, however, the last known residence was the home of their father, and the proof of their absence unheard of from that place for a long period of years was without contradiction. In fact their presence, or even news of them, in a small community would soon become a matter of common knowledge, consequently the making of specific search or inquiry would be a needless proceeding. The presumption of death from seven years absence is founded on the English Statute of 19 Car. II, ch. 6 (3 Eng. Stat. 313), which provides "that any person or persons, for whose lives estates are granted, absent themselves for seven years together, and no evident proof be made of their being living, in any action commenced by the lessors or reversioners for recovery of the premises, shall be counted as dead." In Miller et al. v. Beates et al., supra, the supposed decedent went abroad and when last heard from was in France, and contemplated taking passage to America. Unsuccessful inquiry was made in France concerning him. The court said (page 493): "Although a person who has gone from Philadelphia to France, may be presumed to be living, although he be not heard of for several years, because such things commonly happen; yet when many years have elapsed without hearing from him, and no circumstance is shown, by which this may be reasonably accounted for, it is so contrary to general experience,

that he should be living, that the jury may, and ought to presume his death. For, in such cases, what is to be done? The jury must find the fact one way or the other. They are not to give a verdict by caprice, but upon principle. Therefore, when a man's being alive is inconsistent with the other fact proved in the cause, according to general experience, it ought to be presumed that he is not alive. I find it laid down in 2 Peake's Law of Evid. 356, that where one has not been heard of for many years, this is prima facie evidence to presume his death without issue, until the contrary be proved. This appears to me to be quite reasonable. Many years is an indefinite expression. I am not for fixing, at present, any precise period, after which a presumption of death arises. But I think myself safe in saying that, in the present instance, considering that fourteen years and nine months had elapsed between John G. Schlosser's being last heard of, and the commencement of this action; that when last heard of, he was at a place between which and the City of Philadelphia there was a free communication, and it was then his intent to return to Philadelphia; his being now in life, would be contrary to the usual course of things; that the jury might, and ought to presume his death, and if the case were to come to another trial, the court would so direct them." It was also further said (page 495) : "If he has not been heard of for many years, this in every case is prima facie evidence, sufficient to presume his death without issue, until the contrary is proved."

The question as to the evidence required to raise the presumption of death was again discussed in Innis et al. v. Campbell, 1 Rawle 372, 375, as follows: "A person, proved to have been alive at a particular time, is presumed to be so still; and the onus of proof is on him who alleges the contrary. But in addition to lapse of time, proof that he has not been heard of for seven years, is sufficient to rebut the presumption of life; and, was it shown that Mrs. Wallace had not been heard of for that

period, there would clearly be sufficient to warrant a presumption of her death: 2 Stark Ev. 458. But the question is, whether the lapse of twenty-four years, without proof of inquiry, or other circumstance, be not, of itself, sufficient to warrant such a presumption; and, although I know of no authority in point, I am of opinion that it is."

In the case of Francis v. Francis & Beale, 180 Pa. 644, 646, the supposed deceased had gone with others to settle in Patagonia, and was a member of that colony when last heard from. The contention was that a presumption of his death existed, as no word had been received from him for a period of over seven years. The trial judge affirmed a point that "the presumption of death arising from the absence of the person for seven years unheard from stands as competent and satisfactory proof until it is successfully rebutted by competent evidence to the contrary," with the qualification that if a party left his home "without saying where he was going, or if he had left his home on a business trip or a pleasure trip, and nothing had been heard of him for a period of seven years, then the presumption would arise that he was dead. But if he went away for the purpose of establishing a permanent home somewhere else, and he was known to be alive there, then the presumption would not arise until he would be absent from that home and unheard of there." The jury found the absentee was alive, and this court affirmed the judgment, saying the instruction to the jury was correct, and that "A presumption of death is raised by the absence of a person from his domicile unheard of for seven years. Absence in this connection means that a person is not at the place of his domicile, and that his actual residence is unknown. It is for this reason that his existence is doubtful, and that after seven years of such absence his death is presumed. But removal alone is not enough. The further fact that he has disappeared from his domicile and from the knowledge of those with whom he would naturally communicate, so

that his whereabouts have been unknown for seven years or upwards, is necessary in order to raise the presumption."

Had the sons in this case announced their destination upon departing, or had knowledge of their destination been subsequently acquired, from which it appeared the two boys left home with the intention of establishing their permanent residence at another place, absence from such place unheard of for a period of seven years would become necessary to raise the presumption of death. But under the circumstances of their departure, (and in view of their failure to communicate with their father, to whom they would naturally be expected to impart information), to prove their destination was unknown and that they had not been heard from for the period of time which had elapsed, was sufficient to raise a presumption of death, and must stand as proof until rebutted by evidence to the contrary.

The judgment is affirmed.