## Muschlitz v. Kalman

*Morris Mindlin,* for plaintiff.

*Floyd E. Heller, Jr.,* for defendant.

BARTHOLD, P. J., October 29, 1952.—This is a petition for declaratory judgment filed pursuant to the provisions of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, its amendments and supplements, 12 PS §§831-853. The parties seek a declaratory judgment as to the right and power of defendant, Mary Kalman, to convey to plaintiff, Milton F. Muschlitz, a good and marketable title to certain real estate.

The case presents an existing controversy between contending parties concerning the validity of a deed given by defendant to plaintiff, hence, under sections 1 and 2 of the Uniform Declaratory Judgments Act, 12 PS §§832, 836, relief by declaratory judgment or decree may be granted.

Petitioners have not demanded a jury trial. The act provides that the absence of such demand "shall be treated as equivalent to an agreement to dispense with trial by jury, and . . . all issues of fact, as well as those of law, may be determined and found by the court, subject to exceptions and appeal, as in equity cases": Act of May 22, 1935, P. L. 228, sec. 6, 12 PS §852.

We therefore adopt the procedure which obtains in equity cases: Melnick v. Melnick et al., 154 Pa. Su-

perior Ct. 481. This is essential in every declaratory judgment proceeding where the very nature of a judgment commands that its scope and the circumstances upon which it is founded be clearly and unmistakably defined.

"Inasmuch as the judgment and its enforcement is the end and aim of the whole litigation, to satisfy this purpose it must so dispose of the matters at issue between the parties that they and such other persons as may be affected, will be able to determine with reasonable certainty the extent to which their rights and obligations have been determined": Freeman on Judgments, sec. 72.

Where a judgment or decree lacks such certainty and is absolutely unintelligible, it is a nullity: 34 C. J. 503, 504, §863.

Following the procedure which obtains in equity cases, and treating the facts averred in the petition as admitted, we make the following

### Findings of Fact

1. On January 4, 1928, defendant, Mary Kalman, and her husband, Matthew Kalman, were the owners, as tenants by the entireties, of four lots of land situate in Bethlehem Township, Northampton County, Pa., being lots Nos. 260, 261, 262 and 263, according to plan of lots of Savercool & Wright, known as Bethlehem Annex.

2. On December 20, 1948, defendant, Mary Kalman, filed a petition in the Orphans' Court of Northampton County under the provisions of section 6 of the Fiduciaries Act of June 7, 1917, P. L. 447, requesting the court "to decree the presumption of the death of . . . Mathias Kalman in order that his real estate may pass and devolve as in the case of his actual death, and the persons entitled under the Intestate Laws may enter and take possession, and to authorize the Regis-

ter of Wills of Northampton County to grant letters of administration on his estate to the party or parties entitled thereto or their nominee."

3. In due course a hearing in the Orphans' Court of Northampton County was held upon the aforesaid petition, and on May 27, 1949, the court entered the following final decree:

"And now, to wit, May 27, 1949, upon proof of publication and no evidence of the continuance in life of the presumed decedent having been presented, the decree entered January 31, 1949, establishing the legal presumption of the death of Matthew Kalman, alias Mathias Kalman, as of October 1931 is confirmed absolutely, and the Register of Wills of Northampton County is authorized to issue letters of administration upon the estate of the presumed decedent to the person thereto entitled by the court."

4. In April 1952 defendant, Mary Kalman, entered into a written agreement to sell the four lots in question to plaintiff, Milton F. Muschlitz.

5. On June 27, 1952, the aforesaid decree of presumption of death of Matthew Kalman was recorded in the Office for the Recording of Deeds in and for Northampton County in compliance with section 6(f) of the Fiduciaries Act of June 7, 1917, P. L. 447.

6. On June 30, 1952, defendant, Mary Kalman, presented a petition to the orphans' court requesting the court to fix the amount of bond to be given by defendant, Mary Kalman, in case the presumed decedent, Matthew Kalman, should return and claim the four lots so contracted to be sold by defendant, Mary Kalman. The court fixed the amount of the bond at $4,300, the value of the presumed decedent's interest in the four lots in question.

7. On July 3, 1952, defendant, Mary Kalman, executed the required bond in the sum of $4,300, and the same was duly approved by the court and filed.

8. Upon the search of the title to the lots in question, plaintiff, Milton F. Muschlitz, disputed the right and power of defendant, Mary Kalman, to convey good and marketable title thereto.

9. On or about August 8, 1952, plaintiff, Milton F. Muschlitz and defendant, Mary Kalman, held a settlement upon the aforesaid agreement, and defendant, Mary Kalman, conveyed the lots in question to plaintiff, Milton F. Muschlitz, upon condition that the parties seek a declaratory judgment as to defendant's right and power to convey a good and marketable title.

10. The deed from defendant, Mary Kalman, to plaintiff, Milton F. Muschlitz and Margaret Muschlitz, his wife, was recorded in the Office for the Recording of Deeds in and for Northampton County on August 11, 1952.

## *Discussion*

It appears from the facts admitted of record that Mary Kalman, on December 20, 1948, filed a petition in the Orphans' Court of Northampton County under the provisions of section 6($a$) of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS §371, requesting the court "to decree the presumption of the death of Matthew Kalman (Mathias Kalman) in order that his real estate may pass and devolve as in the case of his actual death, and the persons entitled under the Intestate Laws may enter and take possession, and to authorize the Register of Wills of Northampton County to grant letters of administration on his estate to the party or parties entitled thereto or their nominees." It further appears that on May 27, 1949, the court entered the following final decree:

"And now, to wit, May 27, 1949, upon proof of publication and no evidence of the continuance in life of the presumed decedent having been presented, the decree enterd January 31, 1949, establishing the legal presumption of the death of Matthew Kalman, alias

Mathias Kalman as of October 1931 is confirmed absolutely, and the Register of Wills of Northampton County is authorized to issue letters of administration upon the estate of the presumed decedent to the person thereto entitled by the court."

Defendant, Mary Kalman, contends that by virtue of the foregoing decree real estate which she held as tenant by entireties with her husband, Matthew Kalman, has become her property and therefore she may take possession of it and convey a good title free and discharged of any interest or claim of her husband, the presumed decedent. Plaintiff-purchaser contends that the decree cannot be given this extended meaning, that the decree declaring Matthew Kalman to be a presumed decedent and appointing an administrator for his estate constituted merely an adjudication of Matthew Kalman's death, prima facie. Plaintiff-purchaser further contends that the orphans' court has no jurisdiction under section 6 (a) of the Fiduciaries Act, June 7, 1917, P. L. 447, 20 PS §371, to decree the presumption of the death of a husband in order that his wife may obtain property held by entireties. We are of opinion that the position taken by plaintiff-purchaser is sound.

The legislature has been most specific concerning the distribution and settlement of an estate of a presumed decedent. Petitioner described in section 6 (a) of the Fiduciaries Act, 20 PS §371, is one who is "entitled under the last will and testament of such presumed decedent or under the intestate laws to any share in his or her estate within this Commonwealth, or under any deed, will, or other instrument in writing, or in any other way, method, or manner, to any share or interest in any estate held by or for such presumed decedent, for years or for the term of his or her natural life. . . ."

Upon the decree of presumption of death, section

6(e) of the act, 20 PS §375, authorizes the register of wills to issue letters of administration or to probate the will and grant letters testamentary which ". . . shall be as valid as if the presumed decedent were really dead." Section 6(g) of the act, 20 PS §377, directs that the executor or administrator ". . . shall administer the estate in the same manner and with the same effect as the same would be administered under existing laws of this Commonwealth, if the presumed decedent were in fact dead." Section 6(f) of the act, 20 PS §376, provides that "the real estate of the presumed decedent shall pass and devolve as in the case of actual death, and the persons entitled by will or under the intestate laws may enter and take possession." Distributees, except creditors, are required to give bond to protect the interest of the presumed decedent in case he is actually alive: Fiduciaries Act, sec. 6(f) and (h), 20 PS §376, 378.

"From the foregoing statutory provisions it is plain that the property of a presumed decedent passes to and is transferred to the distributees under the intestate law or the will in precisely the same manner as in case of actual death, reserving to the presumed decedent, however, the right to retake his estate if he reappears": Millar Estate, 356 Pa. 56, 59. It is also plain that property held by the entireties is not within the purview of the enactment.

"The purpose of the Fiduciaries Act in recognizing the common law rule that there is a presumption of death of a person after seven years from the time when he was last known to be living, was not to supply a procedure to determine whether the person is in fact alive or dead, but to set up a conservator for his property within the State if the facts raise a legal presumption of death. True, the administrator appointed for that purpose may distribute the estate to those who

appear to be the owners but only 'with a saving of the rights of the former owner should it subsequently appear that he is the true owner still.' Conserving the property and not distribution of the estate is the primary purpose of the Act. The proceeding, therefore, is in rem and not in personam: Cunnius v. Reading School District, 206 Pa. 469, 56 A. 16": Wesner's Estate, 139 Pa. Superior Ct. 314, 317.

In the instant case defendant, Mary Kalman, claims not under her husband, the presumed decedent, but by right of survivorship under a tenancy by the entireties. We agree with the learned opinion of Van Dusen, J., in Payne's Estate, 11 D. & C. 693, 694, that:

"A petitioner who claims not under the presumed decedent but against him has no standing. A proceeding seeking a decree—not that by reason of a man's death his property has passed to his heirs, but that by reason of his death he has no property which can pass to his heirs—has neither subject-matter nor parties, and we have no jurisdiction of it."

The parties, however, are not without a remedy. The legislature, by enacting the Revised Price Act of June 7, 1917, P. L. 388, sec. 2(a), as amended by the Act of August 5, 1941, P. L. 824, 20 PS §1563, provided an appropriate method to meet the situation presented by the facts of the instant case.

When a statute provides a remedy by which a right may be enforced, no other remedy than that afforded by the statute can be used: Act of March 21, 1806, P. L. 558, 4 Sm. L. 326, sec. 13, 46 PS §156; Derry Township School Dist. v. Barnett Coal Company et al., 332 Pa. 174. Where a remedy or method of procedure is provided by an act, its provisions shall be strictly pursued and exclusively applied: Quein Will, 361 Pa. 133, 150; Thompson v. Morrison, etc., 352 Pa. 616; Bartron v. Northampton County, 342 Pa. 163, 168.

### Conclusions of Law

1. The final decree of the Orphans' Court of Northampton County entered May 27, 1949, establishing the legal presumption of the death of Matthew Kalman as of October, 1931, and authorizing the Register of Wills of Northampton County to issue letters of administration upon the estate of the presumed decedent to the person thereto entitled, may not legally be construed as a decree declaring that real estate which Matthew Kalman held as tenant by entireties with his wife, Mary Kalman, has become her property with right and power to convey.

2. Under the Fiduciaries Act of June 7, 1917, P. L. 447, its amendments and supplements, 20 PS §371 et seq., the orphans' court has no jurisdiction to decree the presumption of the death of a husband in order that his wife may obtain property held by entireties.

### Declaratory Judgment or Decree

And now, October 29, 1952, upon consideration of the case presented for declaratory judgment, and pursuant to findings of fact, and conclusions of law entered, it is ordered, adjudged and decreed

That the final decree of the Orphans' Court of Northampton County entered May 27, 1949, establishing the legal presumption of the death of Matthew Kalman as of October 1931; and authorizing the Register of Wills of Northampton County to issue letters of administration upon the estate of the presumed decedent to the person thereto entitled, may not legally be construed as a decree declaring that real estate which Matthew Kalman held as tenant by entireties, with his wife, Mary Kalman, has become her property, with right and power in her, to convey to a purchaser thereof, a good and marketable title;

That under the Fiduciaries Act of June 7, 1917, P. L. 447, its amendments and supplements, 20 PS

§371 et seq., the orphans' court has no jurisdiction to decree the presumption of the death of a husband in order that his wife may obtain property held by entireties.

The decision of the court setting forth the findings of fact and conclusions of law is marked "filed," and the prothonotary is directed to give notice of the filing thereof forthwith to the parties or their attorneys. If no exceptions thereto are filed within 20 days after service of such notice, this declaratory judgment or decree shall be entered by the prothonotary as a final decree without further order of court.